**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION (COVINGTON)**

| | |
|---|---|
| PEARSON EDUCATION, INC.; ELSEVIER, INC.; MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC; BEDFORD, FREEMAN AND WORTH PUBLISHING GROUP, LLC; and CENGAGE LEARNING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> RENTU.COM, LLC, <br><br> Defendant. | **Civil Action No.** <br><br> **COMPLAINT FOR:** <br><br><br> **1. COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*);** <br> **2. SECONDARY COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*);** <br> **3. TRADEMARK INFRINGEMENT (15 U.S.C. § 1114) and** <br> **4. TRADEMARK COUNTERFEITING (15 U.S.C. § 1114).** <br><br><br><br> **DEMAND FOR JURY TRIAL** |

This action arises from the unlawful distribution of counterfeit textbooks falsely purporting to be those published by Plaintiffs Cengage Learning, Inc., Pearson Education, Inc., Elsevier, Inc., Bedford, Freeman and Worth Publishing Group, LLC, and McGraw-Hill Global Education Holdings, LLC ("Plaintiffs"). Defendant RentU.com, LLC ("Defendant") has persistently engaged in this counterfeiting activity in clear and unambiguous violation of Plaintiffs' rights under federal copyright and trademark law.

Plaintiffs allege, on personal knowledge as to matters relating to themselves, and on information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      Plaintiffs are leading educational publishers who develop, market, distribute, license, and sell a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages on virtually all subjects.  Plaintiffs' publications, which include physical and digital textbooks, are among the most popular and widely used titles in their fields.

2.      Defendant runs a large and sophisticated business that, acting under several assumed names, engages in buying, renting and selling textbooks.  Defendant understands but does not adequately respect the fact that trafficking in counterfeit textbooks violates the federal copyright and trademark laws.  Defendant regularly looks to unknown and unverified sources for cheap books in order to maximize its profits, often purchasing counterfeits that it turns around and sells or rents to the public.

3.      Among Defendant's sources for textbooks are third-party sellers who are not reputable and deal in counterfeit goods.  These spurious dealers are no better than those selling counterfeit watches on a street corner.  They often sell online under pseudonyms and multiple false identities to maintain anonymity.  Moreover, because selling new books at below-market prices may raise suspicions, these sellers often attempt to mask their illegal conduct by selling brand new counterfeit books as "used" or "like new."  Defendant buys from such sellers, even when Defendant has no idea of the sellers' true identities, where they are located, or whether they have a history of illegal activity or any credible explanation for what they are selling.

4.      Defendant sells, rents, and distributes counterfeit textbooks through its online website, at www.bookbyte.com, as well as through third-party marketplaces.  Defendant's sales include counterfeit textbooks, which are unauthorized copies of Plaintiffs' copyrighted works and bear unauthorized reproductions of Plaintiffs' federally registered trademarks.  Defendant sells the

infringing counterfeit textbooks to individual consumers, wholesale distributors, and other re-sellers.

5.      Defendant's inventory is infected with counterfeits, many of which it redistributes into the marketplace.  Indeed, Plaintiffs have purchased counterfeit copies of at least 49 textbook titles from Defendant through its online store front on Amazon.com since December 2016. Plaintiffs have also obtained over 300 counterfeits from Defendant's customers, who purchased them from Defendant doing business as BookByte.com. But this is a mere snapshot.  The true scope of Defendant's distribution of counterfeits is greater and not precisely known to Plaintiffs, who fear that what they know to date is only the proverbial "tip of the iceberg."  Defendant advertises, offers, rents, and sells its counterfeit textbooks to purchasers seeking out legitimate copies of Plaintiffs' textbooks.   On its website and on third-party marketplaces, Defendant identifies the textbooks using the legitimate textbooks' respective titles, editions, authors, cover images bearing Plaintiffs' trademarks, and ISBN (the International Standard Book Number).

6.      Plaintiffs have attempted to work with Defendant to help it avoid counterfeits. Plaintiffs even created a publicly accessible educational website to help Defendant and others avoid counterfeits (http://stopcounterfeitbooks.com).  In March 2017, Plaintiffs notified Defendant of the counterfeit issues in Defendant's inventory and had lengthy and detailed discussions with Defendant concerning the need for it to address its issues with counterfeits.  These discussions were ultimately fruitless. Notwithstanding its persistent, obvious, and ongoing infringement problem, Defendant remains committed to its counterfeit book practices.

7.      Sales of counterfeits displace legitimate sales, depriving Plaintiffs and their authors of the much-needed returns from their creative efforts and investments. Left unchecked, counterfeits threaten the publication of deserving works, depriving students and others of

important learning tools.  Moreover, counterfeits deprive Plaintiffs of control over the quality and characteristics of the textbooks made and sold under their trademarks, thus harming Plaintiffs' brands and confusing the consuming public.  Accordingly, after repeated pleas to Defendant to clean up its involvement with counterfeits have proven unavailing, Plaintiffs seek injunctive relief and damages to put a stop to and obtain redress for Defendant's egregious infringement.

## JURISDICTION AND VENUE

8.      This is a civil action arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  As such, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121.

9.      The Court has personal jurisdiction over Defendant because Defendant transacts business in Kentucky, committed tortious acts within and/or caused injury to Plaintiffs in Kentucky, Plaintiffs' claims arise from those activities, and Defendant should reasonably have expected such acts to have consequences in Kentucky and derives substantial revenue from interstate and/or international commerce.  In particular, Defendant (a) stores its inventory of textbooks including counterfeit textbooks in Kentucky in Erlanger and Lexington, (b) transacts business within Kentucky or contracts to supply goods, including counterfeit goods, in or from Kentucky, (c) has committed acts of copyright and trademark infringement and counterfeiting in Kentucky and in this District, and/or (d) has committed acts of copyright and trademark infringement and counterfeiting outside Kentucky causing injury to Plaintiffs in Kentucky. Defendant expected or should reasonably have expected such acts to have consequences in Kentucky, and Defendant derives substantial revenue from interstate or international commerce. In addition, Defendant sells textbooks, including counterfeits of Plaintiffs' copyrighted textbooks bearing Plaintiffs' trademarks, through online storefronts on highly interactive websites, which are

accessible and sell goods to consumers in Kentucky.  Defendant ships and receives textbooks, including counterfeit copies, from warehouses in Erlanger and Lexington, Kentucky.  Neither Plaintiffs nor Defendant are residents of Kentucky, however, Defendant maintains its inventory at locations in Kentucky, including in Erlanger, Kenton County, Kentucky.

10.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. §§ 1391(b) and 28 U.S.C. § 1400(a) because Defendant conducts, transacts, and/or solicits business in this District.

## PARTIES

11.     Plaintiff Cengage Learning, Inc. ("Cengage"), formerly Thomson Learning Inc., is a Delaware corporation with offices located in New York.

12.     Plaintiff Pearson Education, Inc. ("Pearson"), is a Delaware corporation with its principal place of business at 330 Hudson Street, New York, New York 10013.

13.     Plaintiff Elsevier, Inc. ("Elsevier"), is a Delaware corporation with a principal place of business at 230 Park Avenue, New York, New York 10169.

14.     Plaintiff Bedford, Freeman and Worth Publishing Group, LLC ("Macmillan") is a New York limited liability company wholly owned by Macmillan Holdings, LLC with its principal place of business at One New York Plaza, New York, New York 10004.

15.     Plaintiff McGraw-Hill Global Education Holdings, LLC ("MHE") is a Delaware limited liability company with its principal place of business at 2 Penn Plaza, New York, New York 10121.

16.     Defendant RentU.com, LLC is an Oregon limited liability company with is primary place of business located at 2800 Pringle Road SE, Suite 100, Salem, Oregon 97302 and mailing address of 5121 Skyline Village Loop S, Suite 100, Salem, Oregon 97306. Defendant owns and does business as several entities including BookByte.com, Bookbytedirect.com, Norwest

Textbook, RentBooks, and Zumpf.

## FACTUAL ALLEGATIONS

### A.      Plaintiffs' Businesses, Copyrights and Trademarks

17.      Plaintiffs are some of the largest and most successful publishers of textbooks and other educational materials in the United States and throughout the world.  With a rich literary and educational heritage, Plaintiffs' products and services are used worldwide at educational institutions and in other learning environments.  In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions providing quality content, assessment tools, and educational services in all available media.  Plaintiffs' publications include physical textbooks.  These textbooks are widely available in the marketplace for sale or rental, including from physical and online bookstores.  Plaintiffs' products and services are sold throughout the world, through direct channels and via a worldwide network of distributors.

18.      Plaintiffs invest heavily in publishing their textbooks.  Each year they incur substantial costs for author royalties and other costs of content creation or licensing, development and editing, copyediting and proofreading, typesetting, layout, printing, binding, distribution, promotion, and for support of their editorial offices.

19.      Plaintiffs and/or their predecessors have also invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs and their trademarks.  Plaintiffs invest significant resources annually in the worldwide advertisement and promotion of their goods and services under their respective marks.  Plaintiffs' Marks and the goodwill of the business associated with them in the United States and throughout the world are of tremendous value and have become associated in the public mind with Plaintiffs' reputation for

publishing textbooks of the very highest quality.

20.     Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights under copyright in, *inter alia*, those works or derivative works described on **Exhibit A** (the "Authentic Works").  Plaintiffs or their affiliates have obtained copyright registrations, duly issued by the United States Copyright Office, covering their respective Authentic Works.

21.     Plaintiffs' Authentic Works bear trademarks as set forth on **Exhibit B** (the "Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Register of the United States Patent and Trademark Office.  Plaintiffs own or are the exclusive licensee of their respective Marks.  Plaintiffs' Marks are distinctive and arbitrary and, in some cases, are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Plaintiffs and/or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs' Marks.  All of the registrations listed on Exhibit B are valid, subsisting, unrevoked, and not cancelled. Plaintiffs also own common law rights in these and other trademarks.

22.     Plaintiffs have yet to identify the full range of copyrights and trademarks that Defendant has infringed.  Accordingly, Exhibits A and B are representative, not comprehensive, and will be expanded as discovery proceeds (thereby expanding the scope of "Plaintiffs' Authentic Works," "Plaintiffs' Marks," and "Counterfeit Textbooks" as defined below).

**B.     Defendant's Unlawful Activities**

23.     Beginning not later than 2016, and continuing today, Defendant has sold and distributed counterfeits of Plaintiffs' Authentic Works bearing Plaintiffs' Marks (the "Counterfeit Textbooks").

24.     Defendant has distributed the Counterfeit Textbooks without any authorization or license from Plaintiffs.  Plaintiffs did not print, or authorize the printing of, the Counterfeit

Textbooks.  Plaintiffs did not ever sell, or authorize others to sell, the Counterfeit Textbooks.

25.     Defendant, without any authorization or license from Plaintiffs, has knowingly and willfully used and continues to use Plaintiffs' Marks in connection with the advertisement, distribution, offer for sale, and/or sale of the Counterfeit Textbooks.  The Counterfeit Textbooks are not genuine.  Defendant purports to sell the legitimate and authorized versions published by Plaintiffs, but actually distributes counterfeit versions.

26.     Defendant's infringing activities are substantial.  Plaintiffs currently are aware of at least 121 separate titles of Plaintiffs' Authentic Works that Defendant has infringed.  Exhibit A describes the Counterfeit Textbooks that Defendant has sold and distributed that Plaintiffs have discovered to date.  Exhibit A is representative, not comprehensive, and will be updated over the course of discovery in this action.  This current evidence represents only what Plaintiffs recently have discovered through Defendant's customers and Plaintiffs' own purchases over a relatively short period of time.  During the last several months alone, Plaintiffs bought 30 Counterfeit Textbooks from Defendant, of which 28 shipped from Kentucky.  Defendant claims to the public that its inventory is legitimate, but the fact that Plaintiff could buy Counterfeit Textbooks from Defendant demonstrates that Defendant's policing of its inventory is flawed.

27.     Defendant sells Counterfeit Textbooks to individual consumers and commercial wholesalers and retailers via a variety of channels.   Defendant operates a website at www.bookbyte.com, through which it sells, rents and buys back textbooks for cash.  In addition, Defendant operates the website at www.bookbytedirect.com, which advertises itself as a wholesale textbook service for college bookstores.  Two other websites redirect to the bookbyte.com website including www.rentu.com and www.rentbooks.com.  Defendant also sells books through one or more storefronts it owns and operates through Amazon.com and perhaps other marketplaces.

Plaintiffs require discovery to learn the scope of the Counterfeit Textbooks that Defendant has distributed through these and other channels.  Given the extensive infringing conduct of which Plaintiffs are already aware, it is highly likely that Defendant distributes counterfeits on a daily and large-scale basis.

28.     At the time that Defendant imported, distributed, offered for sale and/or sold the Counterfeit Textbooks, Defendant knew or should have known that the Counterfeit Textbooks were infringing.  Defendant knew or should have known that some of its suppliers are not authorized to reproduce Plaintiffs' Authentic Works or use Plaintiffs' Marks on textbooks. Defendant obtained these books without any due diligence as to the identity of the supplier, the integrity of the supplier, how the supplier supposedly obtained the books, or the authenticity of the books.  Defendant compounded the problem when, upon receipt of the books, it failed to conduct an adequate review for authenticity.

29.     Among other means, Defendant obtains counterfeits through its "buyback" systems.  The principal purpose of a buyback system is to allow students to sell back their textbooks after they are finished using them.  Book buyback systems typically limit the number of textbooks that an individual seller may sell to the entity.  Counterfeit sellers can evade these limitations, however, by creating multiple accounts using fictitious names and/or addresses.  A basic verification process and/or other technical tools could easily detect and prevent much of the laundering of counterfeits by unscrupulous sellers through Defendant's buyback systems.  But Defendant does not take sufficient verification steps.  Nor does Defendant have sufficient controls in place, if any, to identify when the "used" books it buys through the system arrive as new counterfeits.  In essence, Defendant does not take basic steps necessary to root out counterfeits.

30.     By infringing Plaintiffs' copyrights and trademarks, Defendant causes Plaintiffs to

suffer serious financial and reputational injury.  The revenue from Plaintiffs' sales and rentals of textbooks represents a substantial portion of Plaintiffs' respective annual revenues and is therefore important to their financial health.  Both publishers and authors alike are deprived of income when their textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.  A substantial decline in revenue from sales or rentals of Plaintiffs' textbooks could cause Plaintiffs to cease publication of one or more deserving textbooks.  This would have an adverse impact on the creation of new textbooks, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving textbooks.

31.     The Counterfeit Textbooks that Defendant sold are different than and can be inferior to Plaintiffs' Authentic Works.  Among other differences, the binding, glue, paper, color, and printing are often different and inferior.  Content from Plaintiffs' Authentic Works can also be missing from the counterfeit.  Based on the use of Plaintiffs' Marks, actual and prospective purchasers are likely to believe that the Counterfeit Textbooks are Plaintiffs' Authentic Works.  This weakens, blurs, and tarnishes Plaintiffs' Marks.  It further injures Plaintiffs' business reputations by causing Plaintiffs' Marks and the goodwill associated with them to be confused or mistakenly associated with a group or series of textbooks of lesser quality.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.*

32.     Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1 – 31.

33.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to

Plaintiffs (or their predecessors or affiliates) by the United States Copyright Office.

34.     At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendant.

35.     Beginning on an unknown date but at least since September 2016 and continuing to the present, Defendant, with knowledge of Plaintiffs' copyrights in Plaintiffs' Authentic Works, infringed Plaintiffs' copyrights.  Specifically, Defendant infringed Plaintiffs' exclusive rights to distribute their copyrighted works.  It did so by, among other things, selling or renting the Counterfeit Books for profit, without Plaintiffs' permission, license, or consent.

36.     Defendant's unlawful conduct, as set forth above, was willful.  Defendant acted with intentional or reckless disregard of Plaintiffs' copyright rights.

37.     As a result of Defendant's unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

38.     Defendant's actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendant from continuing its infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendant from further infringement.

## SECOND CLAIM FOR RELIEF

### Secondary Copyright Infringement Under 17 U.S.C. §§ 101, et seq.

39.     Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1 – 31.

40.    Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs (or their predecessors or affiliates) by the United States Copyright Office.

41.    At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendant.

42.    Beginning on an unknown date but at least since September 2016 and continuing to the present, Defendant, with knowledge of Plaintiffs' copyrights in Plaintiffs' Authentic Works, secondarily infringed Plaintiffs' copyrights.  By engaging in the illegal conduct alleged above, in addition to directly infringing, Defendant induced, caused, and materially contributed to infringing conduct by others, including resellers to whom Defendant sold the Counterfeit Textbooks for further distribution.  Specifically, by knowingly encouraging, inducing or materially contributing to the infringing activity, Defendant is liable for contributory infringement.  Further, Defendant had a direct financial interest in, and stood to gain a direct financial benefit from, the infringing activity and had a right and ability to supervise the infringing activity.  Accordingly, Defendant is also liable for vicarious copyright infringement.

43.    Defendant's unlawful conduct, as set forth above, was willful.  Defendant acted in reckless disregard of Plaintiffs' copyright rights.

44.    As a result of Defendant's unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

45.    Defendant's actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court

restrains Defendant from continuing its infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendant from further infringement.

## <u>THIRD CLAIM FOR RELIEF</u>

### Infringement of Federally Registered Trademarks Under 15 U.S.C. § 1114

46.     Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1 – 31.

47.     This claim, arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114, is for infringement of trademarks registered to Plaintiffs in the United States Patent and Trademark Office.

48.     Beginning on an unknown date but at least since September 2016 and continuing to the present, without Plaintiffs' authorization, Defendant has been marketing, offering for sale, and selling in commerce counterfeit textbooks under Plaintiffs' Marks.

49.     Defendant's aforesaid uses of Plaintiffs' Marks have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Defendant's goods, in that the public, and others, are likely to believe that Defendant's goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiffs, all to Plaintiffs' irreparable harm.

50.     Defendant, by its above-enumerated acts, willfully and knowingly has violated and infringed Plaintiffs' rights in and to the federally registered Marks, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114), and Defendant threatens to further violate and infringe Plaintiffs' said rights.

51.     Defendant's actions described above have caused and will continue to cause

irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendant from continuing its infringement of Plaintiffs' Marks, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendant from further infringement.

52.    Defendant's aforesaid conduct was intentional, or deliberately reckless, and without foundation in law.

### FOURTH CLAIM FOR RELIEF

### Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)

53.    Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1 – 31.

54.    Defendant is infringing the federally registered Plaintiffs' Marks through its use in commerce of a counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the sale, offering for sale, marketing, distributing, or advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to deceive the public.

55.    Beginning on an unknown date but at least since September 2016 and continuing to the present, Defendant has been intentionally using Plaintiffs' Marks on unauthorized products. Defendant is intentionally infringing upon Plaintiffs' trademark rights in order to further its own business enterprises.

56.    Defendant's counterfeiting of Plaintiffs' Marks, as described above, has caused and will continue to cause irreparable injury to Plaintiffs' reputation and goodwill, for which Plaintiffs have no adequate remedy at law.  Unless this Court restrains Defendant from continuing its counterfeiting activities, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendant from further counterfeiting.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.       Judgment on each of the claims set forth above, including that Defendant's infringement of Plaintiffs' Authentic Works and Marks was intentional and willful.

2.       Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

3.       An accounting and disgorgement of Defendant's profits, gains, and advantages realized from its unlawful conduct, including a reconciliation of purchases and sales of the Counterfeit Books with documents relating to all such purchases and sales;

4.       An order requiring Defendant to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendant's unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

5.       An order enjoining Defendant and all persons who are in active concert or participation with Defendant from further infringing upon Plaintiffs' respective copyrights pursuant to 17 U.S.C. § 502;

6.       An order enjoining Defendant and all persons who are in active concert or participation with Defendant from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

7.       An order requiring Defendant to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendant's unlawful use of their trademarks, as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

8.      An order requiring Defendant to deliver up for destruction all products, packaging, labels, literature, advertising, and other material bearing imitations, including confusingly similar variations, of Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

9.      Prejudgment and post-judgment interest at the applicable rate;

10.     Plaintiffs' attorney's fees, expenses, and costs of suit; and

11.     Such other and further relief the Court deems proper.

**JURY TRIAL DEMAND**

Plaintiffs hereby request a trial by jury.


Dated:  March 20, 2018                    Respectfully submitted,

                                By:   *s/ E. Kenly Ames*
                                      E. Kenly Ames
                                      English Lucas Priest & Owsley, LLP
                                      1101 College Street
                                      Bowling Green, KY 42101
                                      Tel: (270) 781-6500
                                      Fax: (270) 782-7782
                                      kames@elpolaw.com

                                      Scott Zebrak
                                      Katheryn J. Enters
                                      Jia Ryu
                                      OPPENHEIM + ZEBRAK, LLP
                                      5225 Wisconsin Avenue NW, Suite 503
                                      Washington, DC 20015
                                      Tel:  (202) 480-2999
                                      Fax:  (866) 766-1678
                                      scott@oandzlaw.com
                                      katheryn@oandzlaw.com
                                      jia@oandzlaw.com

                                      *Attorneys for Plaintiffs*